IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSHA SIMONDS, an individual, and MATTHEW SIMONDS, an individual, | ) ) ) ) No. 2:21-cv-841 |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| CHRISTINE BOYER, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

Plaintiffs Marsha and Matthew Simonds bring this action asserting many federal and state law claims against various Defendants, including Magisterial District Judge James J. Hanley, Christine Boyer, and Allegheny County.

The case revolves around a dispute over a parking lot owned by the Plaintiffs that is in front of Judge Hanley's courtroom. Plaintiffs lease certain spaces in their parking lot to nearby businesses. Despite that, many visitors to Judge Hanley's courtroom use the parking lot without permission. Plaintiffs claim that Judge Hanley and Ms. Boyer instruct these visitors to do so as retaliation for certain actions taken by Mrs. Simonds and her family. This dispute culminated in an incident that led to criminal charges being brought against Mrs. Simonds (which were later resolved in her favor) that she claims were falsely orchestrated by Judge Hanley as further retribution.

Judge Hanley, Ms. Boyer, and Allegheny County have moved to dismiss all the claims against them in the amended complaint. For the reasons discussed below, the Court grants the motions in part and denies them in part. Specifically, the Court will dismiss: (i) all claims against Allegheny County; (ii) all claims based on an alleged

violation of Mrs. Simonds's Fifth Amendment rights; (iii) Mrs. Simonds's access-to-courts claims; and (iv) Mrs. Simonds's right-to-present-evidence claims. Some of these claims will be dismissed without prejudice and with leave to amend.

## BACKGROUND

### I. The parking lot.

According to the amended complaint, in 2017, Mrs. Simonds acquired property "located at or near 4375 Murray Avenue in the Greenfield area of the City of Pittsburgh." ECF 22, ¶ 16. Mrs. Simonds used that property to provide local businesses with off-street parking options for their customers. *Id.* at ¶¶ 17-18.

### II. The personal debt.

In 2018, Mrs. Simonds's claims that "Judge Hanley and/or his family" owed Mrs. Simonds's mother $20,000 for a personal business matter. ECF 22, ¶ 21. Judge Hanley allegedly initially refused to repay this debt, which forced Mrs. Simonds and her family to hire an attorney and threaten legal action. *Id.* at ¶ 21-22, 88. In response, Judge Hanley repaid the debt, but Mrs. Simonds alleges that this transaction led him to retaliate against her and her family. *Id.* at ¶ 24.

### III. The parking lot dispute.

Judge Hanley maintains offices near Mrs. Simonds's property, and to access those offices, visitors must walk across Mrs. Simonds's property. ECF 22, ¶¶ 19-20. Many "persons attending court, including but not limited to police officers, district attorneys, court officials, constables and other county and government officials would park their cars on Mrs. Simonds'[s] property[.]" *Id.* at ¶ 25. Mrs. Simonds asked Judge Hanley and Ms. Boyer, his administrative assistant, to instruct the court's visitors not to park in her spaces, which were rented out to others. *Id.* at ¶ 26. Rather than honoring that request, Judge Hanley and Ms. Boyer allegedly used their "relationship with the City of Pittsburgh police to harass and intimidate the Simonds

family[.]" *Id.* at ¶ 27. That included specifically instructing visitors to park on Mrs. Simonds's property. *Id.* at ¶ 29.

Eventually, this dispute over the parking spaces was litigated and ended with a consent order that required Mrs. Simonds to lease two parking spaces to Allegheny County for Judge Hanley and the visitors to his office. *Id.* at ¶ 31. But this consent order unfortunately did not end the matter.

Just three days after the consent order was entered, Mrs. Simonds noticed a City of Pittsburgh vehicle operated by Michael Gillespie parked on her lot. *Id.* at ¶ 33. Mrs. Simonds asked him to move to one of Judge Hanley's designated spaces, and he refused. *Id.* at ¶¶ 34-38. Mrs. Simonds then entered Judge Hanley's lobby armed with a copy of the consent order and attempted to speak with Ms. Boyer about the issue. *Id.* at ¶¶ 40-42. Despite Mrs. Simonds's requests, Ms. Boyer instructed Mr. Gillespie to leave his car parked in Mrs. Simonds's lot. *Id.* at ¶ 46. Mrs. Simonds then called 911, and so did Ms. Boyer. *Id.* at ¶¶ 47-48.

Plaintiffs allege that, during Ms. Boyer's call with 911, she falsely reported that Mrs. Simonds was causing a disturbance and refusing to leave Judge Hanley's office, among other things. *Id.* at ¶ 49. When the police arrived, Mrs. Simonds attempted to point the officers in the direction of the illegally parked cars in her lot, but they ignored her and entered Judge Hanley's office. *Id.* at ¶ 55.

A short while later, Officer Adam Thimons walked out of the office and approached Mrs. Simonds. *Id.* at ¶¶ 56-57. He told her that she was being arrested and taken to jail. *Id.* at ¶ 57. At that point, Officer Thimons placed Mrs. Simonds in his police vehicle (Mrs. Simonds claims he did so with unnecessary force). *Id.* at ¶ 59. While in the police car, Mrs. Simonds claims she heard another officer, Michael Burns, state that "this is what happens when you mess with the Court." *Id.* at ¶ 61.

### IV. The criminal charges and proceeding.

Judge Hanley, Ms. Boyer, and several officers who are named as co-Defendants

then held a private meeting in Judge Hanley's office. ECF 22, ¶ 62. During that meeting, the participants allegedly agreed to "falsely subject Mrs. Simonds to criminal prosecution to insulate Officer Thimons from a civil action for wrongful arrest and/or excessive force." *Id.* at ¶ 63(g). A portion of this meeting was allegedly captured on one of the officer's body cameras. *Id.* at ¶ 63.

According to Mrs. Simonds, this criminal prosecution was to retaliate against her for taking legal action against Judge Hanley and Ms. Boyer, and to protect Ms. Boyer from future civil liability for her "false defamatory call" to 911. *Id.* at ¶ 65. Judge Hanley allegedly personally approved this plan and used his position to influence the police to eventually charge Mrs. Simonds with disorderly conduct. *Id.* at ¶¶ 67-68, 70.

Mid-trial, a judgment of acquittal was entered on Mrs. Simonds's behalf for the disorderly conduct charge. *Id.* at ¶ 78. But even that trial was not without some controversy, as Mrs. Simonds alleges that Defendants, including Judge Hanley and Ms. Boyer, worked to prevent a witness, Officer Elizabeth Merkel, from appearing at the trial to testify. *Id.* at ¶¶ 156-69.

Finally, at Judge Hanley's request, Mrs. Simonds alleges that she was separately ordered by law enforcement officers to never re-enter Judge Hanley's office again. *Id.* at ¶ 77.

**SUMMARY OF CLAIMS AGAINST MOVING DEFENDANTS**

| Count | Defendants | Claim |
|---|---|---|
| 1 | Hanley/Boyer/Allegheny County | 42 U.S.C. § 1983 – Fifth Amendment Taking |
| 2 | Hanley/Boyer/Allegheny County | Section 1983 – First Amendment Retaliation |
| 3 | Hanley/Boyer/Allegheny County | Section 1983 – Fifth Amendment Retaliation |
| 4 | Hanley/Boyer | Civil Conspiracy |
| 9 | Boyer | Negligent Infliction of Emotional Distress |

| 11 | Hanley/Boyer | Section 1983 – Fourth Amendment Wrongful Initiation of Proceedings |
|---|---|---|
| 12 | Hanley/Boyer | Malicious Prosecution |
| 13 | Hanley | Section 1983 – Access to the Courts |
| 14 | Hanley | Civil Conspiracy |
| 15 | Hanley/Boyer | Section 1983 – Sixth Amendment Right to Present Evidence |
| 16 | Hanley/Boyer | Civil Conspiracy |

## DISCUSSION & ANALYSIS[1]

### I. Mrs. Simonds's *Monell* claims against Allegheny County fail.

In Counts 1 through 3, Mrs. Simonds brings Section 1983 claims against Allegheny County. In general, municipalities, like Allegheny County, are liable under Section 1983 "only if they have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) (cleaned up). Within this framework, the Third Circuit has clarified that there are three ways a municipality can be liable for the torts of its employees. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

"First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff. *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *Id.* (cleaned up). "Thus, a plaintiff can establish the existence of a custom or policy by showing either that the decision-maker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a governmental custom developed when the official acquiesced to a course of conduct such that it operated as law." *Peterson v. Allegheny Cnty.*, No. 21-78, 2022 WL 280948, at *20 (W.D. Pa. Jan. 31, 2022) (Wiegand, J.) (cleaned up).

Mrs. Simonds's claims against Allegheny County fail, as currently pled, for two reasons. First, she does not point to any "formal policy or pervasive custom that caused [her] alleged injuries." *Id.* Mrs. Simonds argues that her allegation that "numerous persons attending court, including … county and government officials would park their cars on Mrs. Simonds'[s] property, despite Mrs. Simonds'[s] multiple requests to abate this action" amounts to a formal policy. ECF 37, p. 4, (citing ECF 22, ¶ 25)). Even accepting that allegation as true, that's not enough to establish a "formal policy" or a "pervasive" custom. Mrs. Simonds does not even call the use of the parking spaces a "policy," let alone allege facts that would allow the Court to conclude that it was formally adopted by Allegheny County. It's also impossible to tell if this conduct was a pervasive custom because Mrs. Simonds failed to allege how often these county officials parked in the spaces.

Second, in her amended complaint, Mrs. Simonds has identified no individual with final policymaking authority that acted on behalf of Allegheny County. Indeed, the words "final policymaking authority" are completely absent from her pleading. The only "Allegheny County official" that Mrs. Simonds has identified in her briefing is Ms. Boyer, and she is not described as having any policymaking authority (and any

allegation that she does would be implausible, as alleged, considering her job as Judge Hanley's administrative assistant.).[2]

Thus, the Court will dismiss Mrs. Simonds's *Monell* claims against Allegheny County. But the Court will do so without prejudice, and grant Mrs. Simonds leave to amend to attempt to cure the deficiencies identified above. *See Peterson*, 2022 WL 280948, at *20-21.

## II. Mrs. Simonds cannot bring a Fifth Amendment Takings claim against Judge Hanley and Ms. Boyer in their individual capacities.

Mrs. Simonds alleges that Judge Hanley and Ms. Boyer violated her Fifth Amendment rights when they "took [her] personal property, specifically, her parking spaces, without compensation, when [Ms.] Boyer instructed, on [Judge] Hanley's behalf and authority, that Mr. Gillespie did not have to move his vehicle, despite the August 22, 2019 Court order from Judge Klein." ECF 22, ¶ 82. There is at least one fatal problem with Mrs. Simonds's allegations: "a Fifth Amendment Takings claim cannot be brought against the Individual-Capacity [Defendants] in their personal capacities." *United States v. Sandwich Isles Commc'ns*, No. 18-145, 2019 WL 4017233, at *5 (D. Haw. Aug. 26, 2019).

"The very nature of a taking is that a public entity is taking private property for a public purpose, and must provide just compensation in return." *Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, 125 F. Supp. 3d 1051, 1078 (D. Haw. 2015). "This concept is antithetical to the notion that someone acting in an individual capacity has taken property or could be personally liable for a taking." *Marina Point*

---

[2] It is unclear whether Ms. Boyer is even an employee of Allegheny County. She allegedly works for Judge Hanley, who is a Commonwealth of Pennsylvania employee. *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *3 (W.D. Pa. Sept. 30, 2021) (Hardy, J.). It would make sense, then, that Ms. Boyer is also employed by the Commonwealth. For the purposes of the pending motions, however, the Court will accept as true the allegation that Ms. Boyer is employed by Allegheny County, as the issue does not have a material impact on the Court's analysis.

*Dev. Assocs. v. Cnty. of San Bernardino*, No. 19-964, 2020 WL 2375221, at * 3 (C.D. Cal. Feb. 19, 2020) (cleaned up). Several Circuit Courts that have analyzed this issue agree. *See, e.g.*, *Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002) ("[T]akings actions sound against governmental entities rather than individual state employees in their individual capacities."); *Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) ("Unlike a trespass or other property tort which may be committed by either an individual under or not under color of law or by a governmental entity, a taking without just compensation in violation of the fifth amendment is an act or wrong committed by a government body—a taking for public use. … Plaintiff may not maintain a constitutional cause of action against these defendants who neither have nor claim the eminent domain power, nor any power similar to it.").

Mrs. Simonds only brings claims against Judge Hanley and Ms. Boyer as "individuals." ECF 22, ¶¶ 3-4. As a result, her Takings claim under the Fifth Amendment fails as a matter of law.

### III. Mrs. Simonds's First Amendment retaliation claim survives.

In Count 2, Mrs. Simonds alleges that Judge Hanley and Ms. Boyer retaliated against her for "threatening Judge Hanley with litigation, and hiring an attorney to do so," conduct that is protected by the First Amendment. ECF 22, ¶ 88. These Defendants counter that the allegations in her complaint "fail to set forth sufficient facts to meet any of the elements necessary to proceed with a viable First Amendment claim." ECF 30, p. 4. Defendants' argument misses the mark.

To prevail on a First Amendment retaliation claim, Mrs. Simonds must show that: "(1) [she] engaged in constitutionally protected conduct, (2) there was retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) there was a causal link between the constitutionally protected conduct and the retaliatory action." *Conrad v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018) (cleaned up). Ms. Boyer argues that this claim fails right out

of the gate because Mrs. Simonds "[t]hreatening a lawsuit and hiring a lawyer does [not] rise to the level of constitutionally protected activity that could give rise to the retaliation claims." ECF 32, p. 10. Contrary to this argument, though, the Third Circuit has explained that "threatening to file a lawsuit against the Defendants would qualify as constitutionally protected conduct." *Rosario v. Strawn*, No. 22-1312, 2022 WL 3151963, at *3 (3d Cir. Aug. 8, 2022).

Perhaps recognizing this fact, Judge Hanley takes a different approach in his brief. He argues that the speech—*i.e.*, the threat of litigation—was not alleged with "any specificity" and therefore the claims should be dismissed for that reason. ECF 30, p. 5. But that's not true, either. Mrs. Simonds alleges that she personally threatened Judge Hanley "with litigation;" that's specific enough at this early stage. ECF 22, ¶ 88.

Finally, Ms. Boyer argues that the retaliation claim fails because Mrs. Simonds "makes no causal connection between Ms. Boyer's action and any constitutionally protected conduct." ECF 32, p. 10. Ms. Boyer reads the amended complaint too narrowly. There are sufficient allegations to infer causation. *See, e.g.*, ECF 22, ¶¶ 87-89

In sum, while the allegations in the amended complaint are far from a model of clarity and detail, at this early stage, they are sufficient to state a claim for First Amendment retaliation.[3]

---

[3] Additionally, Mrs. Simonds argues that she engaged in protected First Amendment activity when she asked Judge Hanley and Ms. Boyer to "respect her personal property rights as agreed and ordered to on August 22, 2019" in the consent order. ECF 37, p. 6 (citing ECF 22, ¶¶ 91-92). Neither Defendant addresses this conduct in their briefing, which could also serve as the basis for a First Amendment retaliation claim. The Court, however, rejects the proposition that this speech can also support a Fifth Amendment retaliation claim, as alleged by Mrs. Simonds. As discussed above, no Fifth Amendment Takings claim exists in this case, so the Fifth Amendment is not implicated here.

### IV. Mrs. Simonds has stated a Section 1983 claim based on an alleged violation of her rights under the Fourth Amendment.

In Count 11, Mrs. Simonds alleges a Section 1983 claim for "wrongful initiation of proceedings" in violation of her Fourth Amendment rights against Judge Hanley and Ms. Boyer. ECF 22, ¶¶ 126-135. That is, they allegedly "initiated a criminal case against Mrs. Simonds without probable cause using information they knew or should have known to be false." *Id.* at ¶ 127. Defendants argue that "[w]hile such a claim may have been possible under state law, federal law only allows prosecutors to be sued for malicious prosecutions." ECF 30, pp. 6-7. That's incorrect.

A private citizen can be liable under Section 1983 for malicious prosecution. To be liable, there must be an allegation that the private citizen "acted under color of law." *Benard v. Washington Cnty.*, 465 F. Supp. 2d 461, 468 (W.D. Pa. 2006) (Mitchell, J.). In order to act under color of law, Defendants "must be deemed to have engaged in a conspiracy with state actors, or been a willful participant in a joint activity with them." *Id.* (cleaned up).

That's precisely what Mrs. Simonds has alleged here. She alleges that Judge Hanley and Ms. Boyer engaged in a conspiracy to protect a co-Defendant police officer "from a civil action for wrongful arrest and/or excessive force and to punish Ms. Simonds for her protected activities … by employing intimidating tactics and retaliatory criminal prosecution[.]" ECF 22, ¶ 130. That's enough to state a claim.[4]

---

[4] Defendants' selective citation to *Milbourne v. Baker*, No. 11-1866, 2012 WL 1889148 (E.D. Pa. May 23, 2012) as the lone authority supporting their argument does them no favors. In *Milbourne*, the court said that "in most cases" a prosecutor is the "initiating" party, and therefore the one liable for malicious prosecution. *Id.* at *11. But the court then explained the myriad ways someone other than a prosecutor could be held liable, including by "fail[ing] to disclose exculpatory evidence to prosecutors, mak[ing] false or misleading reports to the prosecutor, omit[ing] material information from the reports, or otherwise interfere[ing] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." *Id.* (citation omitted).

**V.     Mrs. Simonds's claims based on an alleged violation of her right to access courts under the First Amendment fail.**

In Count 13, Mrs. Simonds claims that she has been denied the opportunity to view the public proceedings in Judge Haney's courtroom, and that violates her constitutional rights. ECF 22, ¶¶ 146-150. While it is true that all citizens have a constitutional right to attend trials under the First Amendment, "[t]o state a § 1983 for violation of the First Amendment right of access to the courts, a plaintiff must allege an actual injury to his [or her] ability to litigate a claim." *Caratini v. Powell*, No. 20-8924, 2022 WL 2473443, at *5 (D.N.J. July 6, 2022) (citing *Caldwell v Beard*, 305 F. App'x 1, 3 (3d Cir. 2007)). That's because "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983). So, it follows that "a litigant's right of access to the courts is not violated unless he [or she] alleges an actual injury to his [or her] ability to litigate a claim." *Chinniah v. E. Pennsboro Twp.*, No. 15-2240, 2016 WL 5799048, at *6 (M.D. Pa. Aug. 10, 2016) (citing *Lyons v. Sec'y of Dep't of Corr.*, 445 F. App'x 461, 464 (3d Cir. 2011)), *report and recommendation adopted,* No. 15-2240, 2016 WL 5719830 (M.D. Pa. Sept. 30, 2016).

Mrs. Simonds has not made any such allegation. Thus, the Court will dismiss Count 13.

Additionally, Mrs. Simonds alleges a civil conspiracy in Count 14 related to the deprivation of her right of access to courts. However, "[s]ince liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing the vicarious liability for the underlying tort." *Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369, 380 (E.D. Pa. 2018). Without being able to state a sufficient access-to-courts claim, Mrs. Simonds cannot bring a conspiracy claim based on the

same alleged conduct. *Abreu v. Ferguson*, No. 19-20, 2020 WL 1271637, at *7 (M.D. Pa. Mar. 17, 2020) ("[I]n the absence of an actual violation of a constitutional right under § 1983, Plaintiff's conspiracy claim necessarily fails.").

The Court cannot say that further amendment here would be futile, and so will dismiss these claims without prejudice and with leave to amend.

## VI. Mrs. Simonds's claims based on an alleged violation of her right to present evidence under the Sixth Amendment fail.

In Count 15, Mrs. Simonds alleges that a group of Defendants—including Judge Hanley and Ms. Boyer—violated her Sixth Amendment rights by convincing a witness not to comply with a subpoena during Mrs. Simonds's criminal proceeding. ECF 22, ¶ 158. The problem with this claim is that it does not satisfy the requirements of Fed. R. Civ. P. 8(a).

"[F]or a § 1983 claim to survive a motion to dismiss, a plaintiff must allege that each and every defendant was personally involved in depriving him of his rights." *M.T. by & Through Eison v. Peterman*, No. 17-1619, 2019 WL 461083, at *3 (W.D. Pa. Feb. 6, 2019) (Horan, J.) (cleaned up). Because of that requirement, "mere conclusory allegations against defendants as a group that fail to allege the personal involvement of any defendant are insufficient to survive a motion to dismiss." *Edwards v. New Jersey*, No. 22-2396, 2022 WL 3704634, at *3 (D.N.J. Aug. 26, 2022) (cleaned up); *see also M.T.*, 2019 WL 461083, at *3 ("[G]eneral allegations concerning individual defendants as a group are insufficient to maintain the individuals as defendants to a lawsuit." (cleaned up)). That is all that Mrs. Simonds has offered in support of her Sixth Amendment claim, though.

She alleges that "[Officer] Merkel agreed with one or more of the **other Defendants** to not come to court has required by the subpoena in order to avoid providing testimony tending to show that Mrs. Simonds was not guilty." ECF 22, ¶ 158 (emphasis added). Those "other Defendants" include not only Judge Hanley and

Ms. Boyer, but two other Defendants that could have "agreed with" Officer Merkel that she should not go to court. *Id.* at ¶¶ 156-162. Mrs. Simonds does not delineate the actions of any of the separate individual Defendants or explain how those actions contributed to the supposed constitutional violation. That is exactly the kind of impermissible group pleading that Rule 8(a) forbids. *See Muhammad v. Weis*, No. 08-3616, 2009 WL 637112, at *2 (E.D. Pa. Mar. 11, 2009) ("Plaintiff's claims violate Federal Rule of Civil Procedure 8(a), insofar as they consist of blanket allegations against entire groups of individual defendants, but do not describe how each individual actor within the group contributed to the alleged harm.")

As a result, the Court will dismiss Count 15 (and the civil conspiracy claim in Count 16 based on this same alleged conduct). The Court will grant Mrs. Simonds leave to amend, however, because it is not clear that it would be impossible for her to allege sufficient facts to state these claims.

### VII. The Court cannot conclude that Judge Hanley is entitled to sovereign immunity yet.

Judge Hanley also argues that all state-law claims against him in the amended complaint are barred by sovereign immunity.[5] ECF 30, pp. 9-10. Plaintiffs counter that this issue is more appropriate for summary judgment. ECF 37, p. 11. Plaintiffs are correct—it would be premature for the Court to find that sovereign immunity applies, at this stage.

Under Pennsylvania law, the Commonwealth of Pennsylvania and its employees have broad immunity from most state-law tort claims. *Weimer v. Cnty. of*

---

[5] Ms. Boyer also argues she is entitled to sovereign immunity. But it is unclear from the amended complaint who employs her. Because of that ambiguity, it would be premature for the Court to engage in the sovereign immunity analysis. But even if it weren't premature for that reason, it is premature for the same reasons discussed in this section with respect to Judge Hanley.

*Fayette*, No. 17-1265, 2022 WL 2819025, at *26 (W.D. Pa. July 19, 2022) (citing 1 Pa. C.S. § 2310). "This immunity applies to Commonwealth employees in both their official and individual capacities, so long as the employees are acting within the scope of their duties." *Graham v. Pennsylvania Dep't of Corr.*, No. 21-148, 2022 WL 2874724, at *8 (W.D. Pa. Mar. 21, 2022) (cleaned up), *report and recommendation adopted,* 2022 WL 2871331 (W.D. Pa. July 21, 2022).

"Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer." *Mucy v. Nagy*, No. 20-1950, 2021 WL 3370792, at * 12 (W.D. Pa. Aug. 3, 2021) (Dodge, M.J.). "Because sovereign immunity is an affirmative defense, the defendant bears the burden of proof on this issue." *Id.* "Where the facts and inferences to be drawn from the facts are not in dispute, the [C]ourt may determine the scope as a matter of law." *Id.* If more than one inference can be drawn, however, this issue is left to the factfinder. *Id.*

The Court "cannot conclude as a matter of law that the allegations in the amended complaint arise entirely within the scope of [Judge Hanley's] duties." *Zimmerman v. Corbett*, No. 13-2788, 2015 WL 539783, at *11 (M.D. Pa. Feb. 10, 2015). The amended complaint, at a minimum, repeatedly alleges that Judge Hanley acted for retaliatory reasons, which would take his actions outside the scope of his employment. ECF 22, ¶¶ 24, 65, 87-89, 97, 140. Discovery is thus necessary to determine whether Judge Hanley committed the alleged conduct and whether he did so in the scope of his employment with the Commonwealth.

The Court denies Judge Hanley's motion based on sovereign immunity. *See Zimmerman*, 2015 WL 539783, at *11 ("Although the amended complaint arises out of the Defendants' investigation and prosecution of Plaintiff, activities which

obviously arise within the job duties of the various Defendants, it also repeatedly alleges that the Defendants acted for political and retaliatory reasons. … Therefore, the Court agrees with Plaintiff that it would be premature to conclude as a matter of law that the allegations in the amended complaint arise solely within the scope of Defendants' duties."). This denial is without prejudice to Judge Hanley re-asserting the sovereign immunity defense after development of the record, if applicable.

**VIII. Judge Hanley is not entitled to qualified immunity at this stage.**

Finally, Judge Hanley argues that he is entitled to qualified immunity because the allegations against him "fail to establish that any clear statutory or constitutional right was violated." ECF 30, p. 8. But even if they did, Judge Hanley argues that those allegations "cannot establish that his conduct violated clearly established rights." *Id.* Judge Hanley is mistaken on both counts.

As described above, the allegations in the amended complaint are enough to allege certain constitutional claims. Those claims implicate well-established rights under the First and Fourth Amendments. The Court denies Judge Hanley's motion based on qualified immunity without prejudice to him raising the defense at a later stage of the case.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** the motions to dismiss filed by Judge Hanley, Ms. Boyer, and Allegheny County (ECF 29; ECF 31). An order consistent with this memorandum opinion will follow.

Dated: October 20, 2022                              BY THE COURT:

                                                                          */s/ J. Nicholas Ranjan*
                                                                          United States District Judge