# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSHA SIMONDS, | ) | |
| | ) | |
| | ) | 2:21-cv-841-NR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTINE BOYER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION

On October 28, 2025, a jury returned a verdict for Plaintiff Marsha Simonds against Defendant Christine Boyer as to three counts in the complaint: First Amendment retaliation; negligent infliction of emotional distress; and malicious prosecution. The jury awarded Ms. Simonds damages totaling $450,0000: $50,000 in compensatory damages and $400,0000 in punitive damages. ECF 196.

After the Court entered judgment consistent with the verdict (ECF 197), Ms. Boyer moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) (ECF 209).[1] For the reasons below, the Court will deny the motion.

## STANDARD OF REVIEW

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of

---

[1] Ms. Boyer moved for judgment as a matter of law at the close of trial (ECF 187), and the Court denied the motion without prejudice (ECF 194).

the facts for the jury's version." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

A party who raises an issue in a Rule 50(b) motion must have raised the issue with sufficient specificity in her Rule 50(a) motion. *Williams v. Runyon*, 130 F.3d 568, 571–72 (3d Cir. 1997) ("A defendant's failure to raise an issue in a Rule 50(a)(2) motion with sufficient specificity to put the plaintiffs on notice waives the defendant's right to raise the issue in their Rule 50(b) motion.").

## DISCUSSION & ANALYSIS

### I.    First Amendment retaliation claim.

At trial, Ms. Simonds prevailed on a Section 1983 claim for retaliation under the First Amendment. She alleged that she exercised a First Amendment right by attempting to enforce a consent order over a parking-lot dispute with the magistrate's office. She did so by bringing the consent order to the office and discussing it with the judge's secretary, Ms. Boyer. In response, Ms. Boyer retaliated by calling 911, which led to Ms. Simonds being detained by police and ultimately charged for disorderly conduct.

Ms. Boyer makes three challenges now to this claim: (1) Ms. Simonds failed to meet the elements of the claim; (2) Ms. Boyer wasn't acting under the color of state law when she called 911; (3) and Ms. Boyer is entitled to qualified immunity. The Court addresses each argument, in turn.

### A. Ms. Simonds sufficiently proved the merits of her First Amendment claim to the jury.

Ms. Boyer argues that Ms. Simonds "did not engage in a protected First Amendment activity" and "failed to prove each element of a First Amendment retaliation." ECF 209 at 1. To state a First Amendment retaliation claim, Ms. Simonds had to "show (1) that [she] engaged in a protected activity, (2) that defendant['s] retaliatory action was sufficient to deter a person of ordinary firmness

from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Ms. Boyer didn't address the second and third elements in her initial Rule 50(a) motion. ECFs 187 & 188. She thus waived those arguments, and the Court will not consider them. *Williams*, 130 F.3d at 571–72.

The only issues as to First Amendment retaliation and its elements that Ms. Simonds preserved are: (1) as to the first element of the claim, where she argued that Ms. Simonds did not engage in protected First Amendment activity; and (2) that Ms. Simonds did not have standing to bring a First Amendment claim on behalf of Vera Holdings, LLC. *Id.* The Court will consider the merits of these arguments.

### i.    A reasonable jury could have found that Ms. Simonds engaged in First Amendment protected activity.

The threshold requirement for a First Amendment retaliation claim is "that the plaintiff identify the protected activity that allegedly spurred the retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). At trial, Ms. Simonds argued that when she tried to enforce the consent decree, she exercised her right to raise a grievance with a government body. The Court instructed the jury:

> To establish Ms. Boyer deprived Ms. Simonds of this First Amendment right, Ms. Simonds must prove the following additional elements by a preponderance of the evidence … First: Ms. Simonds was engaged in a constitutionally protected activity. With respect to that requirement, Ms. Simonds alleges that she raised the matters contained in the consent order with Ms. Boyer, which constitutes a protected activity. If you find that she raised the matters of the consent order with Ms. Boyer, then you must find that she engaged in constitutionally protected activity.

ECF 192 at 7.

The jury found in favor of Ms. Simonds—that raising a grievance by attempting to enforce a consent decree is a right recognized by the First Amendment.

The Court therefore examines whether a reasonable jury could have, based on the evidence presented at trial, found as such.

Under the First Amendment, a citizen has the right to petition a government entity for a private grievance involving that citizen and the government entity. *See Eichenlaub*, 385 F.3d at 282–84 (holding that a private landowner's speech relating to zoning dispute, for which township retaliated against him and his family, was entitled to First Amendment protection).

In *Eichenlaub*, the plaintiff and his family were "embroiled in a contentious zoning dispute" with Indiana Township and several Township officials. *Id.* at 276. There, the Eichenlaub family filed several applications with the Township to develop lots on various parcels of property they owned, and there were numerous disagreements. *Id.* At one point, Mr. Eichenlaub raised a private grievance at a Township Board of Supervisors meeting, which became the basis for Mr. Eichenlaub's First Amendment retaliation claim. *Id.* at 279. The Third Circuit considered whether Mr. Eichenlaub's speech—airing a private grievance to a government body (*i.e.*, the Township) amid an ongoing dispute between himself and the Township—was entitled to First Amendment protection. *Id.* The Third Circuit held that it was. *Id.* at 284.

This case is analogous, both legally and factually. Ms. Simonds and her family were involved in a contentious dispute with the magistrate judge's chambers, including Ms. Boyer. And the dispute involved a parcel of land (*i.e.*, the parking lot) owned by Ms. Simonds and her family. Ms. Simonds, her family, and the magistrate judge's chambers came to an agreement—memorialized in the consent decree that Ms. Simonds sought to enforce on August 27, 2019. As in *Eichenlaub*, Ms. Simonds and Ms. Boyer disagreed over the requirements of the consent decree. And on August 27, 2019, Ms. Simonds sought to air a grievance related to the enforcement of that decree.

For these reasons, the Court concludes that it was correct in instructing the jury that the airing of the consent decree on August 27, 2019, constituted protected activity. And there was ample evidence for the jury to conclude that that was what Ms. Simonds did on that date.

### ii.     Ms. Boyer's "standing" argument fails.

Ms. Boyer also argues that Ms. Simonds did not have standing "to assert the First Amendment rights of Vera Holdings, LLC." ECF 209 at 2. That is, Vera Holdings, LLC, executed the consent decree, not Ms. Simonds. Ms. Boyer argues that Ms. Simonds was a non-party, so lacked standing to invoke it. This is a red herring.

A person doesn't have to have "standing" in the Article III sense to engage in protected First Amendment activity. Ms. Simonds asserted *her own* First Amendment right to petition—a right that exists regardless of whose interest her advocacy served. *See, e.g.*, *Eichenlaub*, 385 F.3d at 284 (recognizing an individual's right as a private citizen to raise a grievance related to a zoning issue); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297–98 (3d Cir. 2016) ("Both the Free Speech Clause and the Petition Clause protect 'personal expression'—both expression generally and expression directed towards the government for the specific purpose of asking it to right a wrong."). It doesn't matter whether Ms. Simonds had third-party standing to bring a suit in federal court on behalf of Vera Holdings, because that's not what she did. She brought a First Amendment retaliation suit in federal court on her own behalf because she raised a grievance to a governing body, and the government official subsequently called 911.

Moreover, the evidence at trial was sufficient to show that Ms. Simonds was essentially an agent of Vera Holdings. This was a family business owned by her mother. Ms. Simonds was the main person involved in the negotiation of the consent decree, and she was acting on behalf of Vera Holdings in her dealings with Ms. Boyer. *See, e.g.*, ECF 224 at 59:1–3, 66:16–18, 76:7–9; ECF 229 at 7:10–12, 192:13–24; *Bolus*

*v. United Penn Bank*, 525 A.2d 1215 (Pa. 1987) (evidence of agent's authority to make loans established agency relationship between bank and its assistant vice-president).[2]

Ms. Boyer's challenges to the First Amendment retaliation claim fail.

### iii.    Ms. Boyer acted under the color of state law.

Even if Ms. Simonds proved her First Amendment retaliation claim, Ms. Boyer argues that she is shielded from liability under Section 1983 because she did not act "under the color of state law" when she called 911.  ECF 187; ECF 209.  She preserved this argument by arguing it with specificity in her Rule 50(a) motion, so Ms. Simonds was on notice.  ECF 187; ECF 188.  The Court will thus address her argument on the merits.

The Court instructed the jury about the legal definition of acting under the color of state law:

> The first claim that Ms. Simonds has brought against Ms. Boyer is a claim that her First Amendment rights were violated.  This claim is brought under a federal statute—42 U.S.C. §1983—which is a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color of state law.  For Ms. Simonds to prevail on this claim, she must prove two elements by a preponderance of the evidence.
>
> First: Ms. Boyer acted under color of state law.
>
> Second: While acting under color of state law, Ms. Boyer deprived Ms. Simonds of a federal constitutional right.

---

[2] Ms. Simonds's mother, Anna Zaydenberg, testified that while she is the sole owner of Vera Holdings, LLC, Ms. Simonds and Ms. Zaydenberg's son-in-law had authority to act on behalf of the company:

> Question: Did anybody else have authority to act on behalf of Vera Holdings in August 2019?
> Answer: Yes. My daughter helped me, and my son-in-law helped me.

ECF 224 at 66:16–18.

### 1. Action Under Color of State Law – Determining When an Official Acted under Color of State Law

I will begin by discussing the "under color of state law" requirement. Ms. Boyer is an official of the Fifth Judicial District of Pennsylvania. However, Ms. Boyer alleges that during the events at issue in this lawsuit, she was acting as a private individual, rather than acting under color of state law.

For an act to be under color of state law, the person doing the act must have been doing it while clothed with the authority of the state, by which I mean using or misusing the authority of the state. You should consider the nature of the act, and the circumstances under which it occurred, to determine whether it was under color of state law.

The circumstances that you should consider include:

- Whether Ms. Boyer was acting for work-related reasons. However, the fact that a defendant acts for personal reasons does not necessarily prevent a finding that the defendant is acting under color of state law. A defendant who pursues a personal goal, but who uses governmental authority to do so, acts under color of state law.
- Whether the Ms. Boyer's actions were related to her job as an employee of the Fifth Judicial District.
- Whether Ms. Boyer identified herself as a government official.
- Whether Ms. Boyer used her official position to exert influence over the plaintiff.

You must consider all of the circumstances and determine whether Ms. Simonds has proved, by a preponderance of the evidence, that Ms. Boyer acted under color of state law.

ECF 192, pp. 6–7.

Based on the foregoing criteria, a reasonable jury could have found that Ms. Boyer acted under the color of state law. When the incident occurred, Ms. Boyer was working her government job, on the clock, at the counter where she works, doing her job (interacting with people in the lobby). She testified that the chambers was a "one staff" or "one girl" operation, which a jury could infer meant that she held herself out

as a government official and had influence over Ms. Simonds. ECF 206 at 38:21. One of Ms. Boyer's defenses at trial was to suggest that she was enforcing a different court order that prevented Ms. Simonds from entering the building—which also goes to conduct within her governmental position. *Id.* at 30:1–17. And the 911 call itself reflected that she was holding herself out as a government official, making a complaint that concerned the safety of the courthouse.[3]

All these facts are sufficient to support the jury's finding that Ms. Boyer was acting under the color of state law when she called 911 in retaliation for Ms. Simonds's speech.

## II.    Ms. Boyer is not entitled to qualified immunity.

Ms. Boyer also argues that she is entitled to qualified immunity for the Section 1983 claim. Officials receive qualified immunity unless: (1) the plaintiff has pled a constitutional violation; and (2) the constitutional right must have been clearly established. *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017). "A clearly established right is one that is sufficiently clear that every reasonable officer would have understood that what he is doing violates the right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up).

### A. Ms. Simonds proved a constitutional violation.

The jury found in favor of Ms. Simonds as to whether her actions on August 27, 2019, constituted a protected activity. And in her Rule 50(a) and (b) motions, Ms. Boyer only asserts that, as to qualified immunity, the First Amendment right at issue was not clearly established. ECF 188 at 7–9; ECF 210 at 8–11. So the Court accepts

---

[3] When Ms. Boyer called 911 on August 27, 2019, she stated to the 911 dispatcher: "Marsha Simonds…refuses to leave the court, and she continues to cause a disturbance…she's yelling at me." Joint Exhibit 3. A reasonable jury could have concluded from the words used by Ms. Boyer about "the court" that she was acting under color of state law. The police's response confirmed as much, as the police responded with high urgency, fearing that this was a courthouse security issue. ECF 227 at 187–189.

the jury's verdict as to the First Amendment right—finding that Ms. Simonds proved a constitutional violation—and focuses only on prong two: whether this right was clearly established on the date of the incident, August 27, 2019.

### B. The First Amendment right at issue is clearly established.

For a constitutional right to be "clearly established," the "contours" of the constitutional right at issue must be sufficiently clear that a reasonable official would understand that "what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

The allegedly violated right must be described at an appropriate level of particularity. *Anderson*, 483 U.S. at 639–40. For purposes of the "clearly established" prong of the qualified immunity analysis, there doesn't need to be a case with identical facts to put an official on notice that his conduct would violate a constitutional right; but "existing precedent must have placed the statutory or constitutional question beyond debate." *Davila v. N. Reg'l Joint Police Bd.*, 370 F. Supp. 3d 498, 513 (W.D. Pa. 2019) (Hornak, J.) (citing *White v. Pauly*, 580 U.S. 73, 79 (2017)) (cleaned up). District courts must first look to Supreme Court precedent. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 248 (3d Cir. 2016). Then, courts must turn to Third Circuit precedent and determine whether there is a "robust consensus of cases persuasive authority" from the controlling circuit court or other courts of appeals. *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017) (cleaned up); *Davila*, 370 F. Supp. 3d at 533.

The Supreme Court has also recognized that in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)

(cleaned up).  "Officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.*

Considering these established principles, the Court concludes that the right at issue in this case is this: *the right of an individual to be free from retaliation, including through false reports to law enforcement, for expressing a grievance to a governing body concerning an agreement of which that governing body is a party.*[4]

---

[4] The Court instructed the jury on the First Amendment retaliation claim:

> The second element of Ms. Simonds's Section 1983 claim is that Ms. Boyer deprived her of a federal constitutional right.  The constitutional right at issue involves the First Amendment to the United States Constitution, which protects citizens' freedom of speech.  The First Amendment protects persons from retaliation by the government when exercising protected speech.  To establish Ms. Boyer deprived Ms. Simonds of this First Amendment right, Ms. Simonds must prove the following additional elements by a preponderance of the evidence:

> First: Ms. Simonds was engaged in a constitutionally protected activity.  With respect to that requirement, Ms. Simonds alleges that she raised the matters contained in the consent order with Ms. Boyer, which constitutes a protected activity.  If you find that she raised the matters of the consent order with Ms. Boyer, then you must find that she engaged in constitutionally protected activity.

> Second: Ms. Boyer's actions against Ms. Simonds would chill a person of ordinary firmness from continuing to engage in the protected activity.

> Third: Ms. Simonds's protected activity was a substantial or motivating factor in the defendant's conduct.  This means that there is a casual link between the protected activity and Ms. Boyer's actions on August 27, 2019.  To establish the requisite causal connection, you may consider, among other things, an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or a pattern of antagonism coupled with timing to establish a causal link.  With respect to a motivating factor, Ms. Simonds is not required to prove that the exercise of First Amendment rights was the sole motivation or even the primary motivation for Ms. Boyer's actions.  Ms. Simonds need only prove that the exercise of her First Amendment rights played a motivating part in Ms. Boyer's conduct even though other factors may also have motivated Ms. Boyer.

The right at issue here has two parts: (1) the First Amendment right to petition a government body, including a magistrate's office, with the added layer of petitioning about an agreement of which the governing body is a party; and (2) the right to be free from a retaliatory false report to law enforcement. The Court examines each, in turn.

### i. The Supreme Court and Third Circuit recognize the right of private citizens to petition various departments of government, including the courts.

The First Amendment's right to petition the government for redress of grievances is among the most foundational of constitutional protections. This includes the right of citizens to petition various government bodies, like courts and court officials. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.") And the Supreme Court recognizes that private citizens can bring Section 1983 First Amendment retaliation claims against local government bodies. *Lozman*

---

> Fourth, that Ms. Boyer did not have "probable cause" for initiating any criminal proceedings against Ms. Simonds. "Probable cause" means that there was, from all of the circumstances present at that time, a fair probability that Ms. Simonds committed the crime alleged.
>
> Fifth, Ms. Boyer caused criminal proceedings to be initiated against Ms. Simonds that formed the basis for the two charges of disorderly conduct.

ECF 192, pp. 7–8. The Court has refined, rather than redefined, the constitutional right at issue here based on the facts developed at trial, the Court's instructions, and drawing all inferences in Ms. Simonds's favor, because the jury found in her favor. *See Curley v. Klem*, 499 F.3d 199, 213 (3d Cir. 2007) ("Though multiple inferences are possible, we must draw all inferences in Klem's favor, rather than Curley's, since we are reviewing a verdict for Klem."). The jury's factual findings thus guide the Court's qualified-immunity analysis. *Id.* at 216 (recognizing that when district courts engage in a qualified-immunity analysis, the court must examine all of the facts and circumstances as found by the jury).

- 11 -

*v. Riviera Beach*, 585 U.S. 87, 101 (2018) (holding that even a finding of probable cause does not bar a First Amendment retaliation claim against a city).

The Third Circuit has likewise long recognized this cause of action, even where a private citizen and the defendant have an agreement and a dispute arises involving that agreement. In *Eichenlaub*, the Third Circuit found that private citizens may bring First Amendment retaliation claims involving private concerns against government officials. *Eichenlaub*, 385 F.3d at 284. There, Mr. Eichenlaub and his family had been in a longstanding dispute with the city, and at various points had agreements in the form of plan approvals with the city involving land owned by the Eichenlaubs. Then when Mr. Eichenlaub exercised his First Amendment right to petition, he did so to express a grievance, in part, related to an agreement that he, his family members, and the city had reached related to land disputes.

The facts at issue here are analogous to the facts in *Eichenlaub*, because Ms. Simonds and her family had a longstanding dispute with Judge Hanley's chambers and Ms. Simonds petitioned at the chambers to enforce the consent decree (*i.e.*, an agreement).

In *Mirabella*, the Third Circuit similarly found that private citizens have a First Amendment right to petition government bodies on matters within those bodies' jurisdictions. *Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017) (holding that residents engaged in speech and petitioning protected by the First Amendment when Mr. and Mrs. Mirabella petitioned their local government and threatened litigation, and government official's no contact email violated the Mirabella's First Amendment right to petition, even though qualified immunity barred First Amendment right to petition claim because, at the time, the right to be free from retaliation in the form of a no contact email had not been clearly established).

Taken together, this precedent shows that the right to petition a governing body extends to all forms of government, including the courts (*i.e.*, a local magistrate's

office).  The right to petition also extends to private grievances where the factual underpinnings of an individual's exercising of that right involves a private citizen whose family has had an ongoing dispute with a local governing body, and at various points reached an agreement with the governing body.  *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 277 (3d Cir. 2004) ("After several rejections and subsequent revisions, the Township approved the Eichenlaubs' amended subdivision plan on June 22, 1999, conditioned upon an execution of a satisfactory developer's agreement.").

The Court thus finds that existing precedent placed the constitutional question beyond debate, and that a reasonable official in Ms. Boyer's position would have known that Ms. Simonds exercised a First Amendment right on August 27, 2019.

### ii. The Supreme Court and Third Circuit recognize the right to be free from retaliation for petitioning activity, and, considering the precedent on falsification, also recognize the right to be free from retaliation when such retaliation is advanced through false reports to law enforcement.

Like the First Amendment right to petition, the Supreme Court has long recognized that knowing fabrication by government officials is constitutionally cognizable.  *See, e.g.*, *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (creating the standard for a *Franks* hearing by holding that knowingly or recklessly false statements in a warrant affidavits, if material to a magistrate judge's finding of probable cause, can be grounds for a Fourth Amendment challenge); *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) (recognizing that false statements in a probable cause-affidavit can be grounds for a Fourth Amendment challenge, and thus confirming that fabrication is constitutionally cognizable) (collecting cases).  And "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  Taken

together, this precedent provides foundation for the principle that officials, like Ms. Boyer, who deliberately falsify the predicate for state action against a private citizen cannot invoke qualified immunity to shield that conduct.

The Third Circuit has also recognized that fabrication is constitutionally cognizable, and that such false reporting can be grounds to deny qualified immunity. In *Halsey v. Pfeiffer*, the Third Circuit held that government officials who fabricate evidence violate clearly established rights and are not entitled to qualified immunity. 750 F.3d 273, 292–93 (3d Cir. 2014) ("[W]e believe that no sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence. We emphatically reject the notion that due process of law permits the police to frame suspects.") (cleaned up). "Indeed, it has been an axiomatic principle of our justice system that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. As the Court of Appeals for the First Circuit said in *Limone*, 'we are unsure what due process entails if not protection against deliberate framing under color of official sanction.'" *Id.* at 296 (quoting *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004)) (cleaned up); *see also Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) (extending *Halsey*'s holding to wrongful criminal charges).

The evidence at trial showed, and the jury found, that Ms. Boyer lied to law enforcement when she called 911 and stated that Ms. Simonds was disorderly. Three witnesses who were in Judge Hanley's office during the incident testified that Ms. Simonds did not yell or cause any disturbances.

Michael Gillespie, the City of Pittsburgh Inspector who was parked in a spot that was the subject of the dispute, testified: "She wasn't yelling at me. She just told me I couldn't park there." ECF 227 at 17:5–7; "She's not yelling or screaming or arguing with me in any way. She's just probably asking about – telling me to move my car, I'm assuming." *Id.* at 20:17–19. Marilena Christopher, a visitor to Judge

Hanley's chambers on the same morning, testified: "No, I didn't hear her yelling at all." ECF 225, p. 21:5–10. Ms. Christopher's husband, also there, testified, "I didn't hear her yelling at [Mr. Gillespie]." *Id.* at 47:23.

So the evidence supports that Ms. Boyer made a malicious and false report to law enforcement, which violated a clearly established right. *See R.K. v. Y.A.L.E. Schs., Inc.*, 621 F. Supp. 2d 188, 198 (D.N.J. 2008) ("The precedent reviewed above concerning First Amendment retaliation claims indicates unmistakably that a reasonable governmental officer would understand that maliciously filing fraudulent and inflammatory complaints with DYFS and the police department to retaliate against a parent for exercising her rights under the IDEA runs afoul of the First Amendment.").

In sum, the right at issue here was clearly established. The Court therefore denies Ms. Boyer's Rule 50(b) motion as to her qualified immunity affirmative defense argument.

### III. Ms. Boyer is not entitled to sovereign immunity for the negligent infliction of emotional distress (NIED) claim.

Ms. Boyer next challenges the NIED verdict against her, claiming that she had sovereign immunity under state law. She argues that she was acting within the scope of her employment, which immunizes her from any state tort liability. She argues that all of her "actions occurred while [she] attempted to maintain order in the magisterial office." ECF 210 at 11. The Court disagrees. There are at least two problems with this argument.

First, Ms. Boyer waived her sovereign-immunity defense. On summary judgment, the Court advised the parties that sovereign immunity implicated disputes of fact, and should be submitted to the jury. ECF 106 at 31. Ms. Boyer, though, never raised this at trial—for example, by proposing jury instructions as to this affirmative defense, requesting a jury interrogatory on it, or even presenting any argument or

evidence to the jury on it.  True, she raised it in her Rule 50(a) motion to the Court—but the Court is not the finder of fact, and there were obvious disputes over Ms. Boyer's conduct, including whether her actions were done to maintain order, as Ms. Boyer suggests now, or done out of malice.  *Just. v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019) ("[W]here more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury.") (cleaned up).

Second, even if Ms. Boyer didn't waive the argument, it fails on the merits. There was more than sufficient evidence for the jury to conclude that Ms. Boyer fabricated the nature of the incident out of malice towards Ms. Simonds, particularly given their contentious relationship.[5]  As the Court previously held at summary

---

[5] Ms. Boyer testified on direct examination:

> Question: You don't like Ms. Simonds, do you?
> Answer: Not really.
> Question: You didn't like her before August 27, 2019, did you?
> Answer: No, I did not.
> Q. You didn't like her because she was dealing with the parking lot issue and you had to put up with those parking lot issues; correct?
> Answer: It's one of the reasons.
> Question: Okay.  And because you had to put up with those parking lot issues, you knew when Mr. Gillespie came in and said somebody was yelling about the parking lot, that's why you knew it was either Ms. Simonds or Anna Zaydenburg; is that true?
> Answer: Yes.
>
> Question: What was your intention for what would happen to Ms. Simonds on August 27, 2019?
> Answer: That she would leave me alone.
> Question: Did you want her to be charged with a crime?
> Answer: I wanted her to stop doing what she was doing.

ECF 206 at 59:19–25, 60:1–7, 91:11–25.

judgment, "[t]here is no immunity doctrine that shields a government official from intentionally lying to law enforcement due to personal animus.*" Simonds v. Boyer*, No. 2:21-CV-841, 2025 WL 475363, at *16 (W.D. Pa. 2025) (Ranjan, J.). *See also Lockhoff v. Slonaker*, No. 16-2893, 2017 WL 2423790, at *16 (E.D. Pa. June 5, 2017) ("Because knowingly submitting false allegations to a prosecutor would not serve the interests of the Pennsylvania State Police or be otherwise justified by a legitimate penological purpose, such activity falls outside a Trooper's scope of employment, and so sovereign immunity is unavailable."). Further, though Ms. Boyer argues that she was just following the magistrate judge's instructions in enforcing a venue order, there was sufficient evidence for the jury to conclude that this was just a pretextual reason for Ms. Boyer's conduct.[6]

## IV.    Ms. Boyer is also not entitled to immunity under the Political Subdivision Tort Claims Act on the NIED claim.

Ms. Boyer also seeks immunity for the NIED verdict under the Political Subdivision Tort Claims Act. "The Political Subdivision Tort Claims Act grants the City governmental immunity from liability for any damages resulting from an injury to a person or property caused by any act of the City, its employee, or any other person, except as specifically provided for under 42 Pa. Cons. Stat. § 8542. Similar to sovereign immunity, for it to apply, the employee must be acting "*within the scope of his office or duties*." So for the same reasons that the sovereign immunity defense fails, so too does PSTCA immunity.

---

[6] To be clear, there is no tension between the jury finding that Ms. Boyer acted under the color of state law for purposes of Section 1983, but did not act within the scope of her employment for purposes of avoiding sovereign immunity. These are somewhat related, but also separate in material respects. For example, as relevant here, a person can be acting under the color of state law by operating a judicial office and making a 911 call as part of her duties at the office, but not acting within the scope of employment if that call is false and done out of malice. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that state officers may be personally liable for damages under Section 1983 based upon actions taken in their official capacities).

The statute also provides that there is no immunity in the case of "malice" or "willful misconduct." *Id.* at § 8542(a)(2). There was sufficient evidence to establish that Ms. Boyer engaged in malicious or willful misconduct, and the jury found as much by imposing punitive damages.

## V. There was sufficient evidence to support the jury's verdict as to malicious prosecution.

Lastly, Ms. Boyer challenges the malicious-prosecution verdict against her, arguing that she was not the "determining factor" to cite Ms. Boyer or pursue her prosecution and thus cannot be found liable for malicious prosecution. ECF 209. Malicious prosecution under Pennsylvania law requires that the defendant be "the determining factor in the official's decision to commence the prosecution, *or that the information furnished by [the defendant] upon which the official acted was known to be false." Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 711 (Pa. 2001) (emphasis added). Ms. Boyer fails to address the second prong—that a defendant can be found liable when she has furnished false information to an official who then acts on that information. Regardless, her claim fails under either prong.

First, as to prong one, there is evidence in the trial record to establish that Ms. Boyer was the determining factor in Officer Thimons's decision to cite Ms. Boyer. Officer Thimons testified that when he arrived on scene, Ms. Boyer pointed to Ms. Simonds and said "she…refuse[s] to leave the building." ECF 227 at 173:18–22. He said that he did not see Ms. Simonds do anything disorderly. *Id.* at 173:14–15. He put Ms. Simonds in handcuffs because Ms. Boyer told him that she would not leave the building. *Id.* at 176:10–13. He also testified that he believed Ms. Simonds was defiantly trespassing "based on combined, what Boyer told me and the 911 call. . . . It was a call for a disorderly person refusing to leave DJ Hanley's office." *Id.* at 176:20–26. He believed that when he arrived, he thought the parking lot was part of court property and that Ms. Simonds was refusing to leave. *Id.* at 188:1–25; 189:1–

25. When he arrested Ms. Simonds, he planned to charge her with defiant trespass. *Id.* And he believed that Ms. Boyer was "telling the truth" about Ms. Simonds being disorderly and defiantly trespassing. *Id.* at 197:1–25, 198: 1–20. Even though Officer Thimons testified that he received "orders" from his "superiors regarding how to charge Ms. Simonds," that does not absolve Ms. Boyer's being the one who provided the original false predicate for the charges ECF 227 at 192:16–18.

Moreover, just because the officers were the ones that actually wrote up the charges, this doesn't mean Ms. Boyer wasn't a "determining factor." *See Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("It is clear, moreover, that the causation is understood to be but-for causation, without which the adverse action would not have been taken."). Had Ms. Boyer not made the initial 911 call, Officer Thimons never would have handcuffed Ms. Simonds and ultimately brought charges against her.

Second, as to prong two, there is sufficient evidence in the trial record to establish that Ms. Boyer furnished false information to the 911 operator and Officer Thimons. Ms. Boyer told the 911 operator that Ms. Simonds "refuses to leave the court, and she continues to cause a disturbance…she's yelling at me." Joint Exhibit 3. As noted above, three witnesses testified that Ms. Simonds was not yelling. Ms. Boyer also furnished false information to Officer Thimons. He credibly testified that he included in his report that Ms. Simonds was yelling profanities because he believed Ms. Boyer was telling the truth. ECF 227 at 197:15–23.

The Court therefore denies Ms. Boyer's Rule 50(b) motion as to her argument that she was not the determining factor for Ms. Simonds's malicious-prosecution claim.

## CONCLUSION

For these reasons, the Court will deny Ms. Boyer's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  An appropriate order follows.

Dated: July 21, 2026

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge